**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **RANDY McNEAL and VICKI McNEAL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-00067** |
| | ) | **Judge Campbell / Knowles** |
| **SMITH & WESSON CORPORATION and Unidentified John Doe Employees,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

# REPORT AND RECOMMENDATION

## I. Introduction and Background

This matter is before the Court upon Defendants' Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 8. As grounds for their Motion, Defendants argue that Plaintiffs' Complaint must be dismissed because it lacks sufficient factual allegations to support "the essential element of causation" under the Tennessee Products Liability Act of 1978. *Id.* Defendants have contemporaneously filed a supporting Memorandum of Law. Docket No. 9.

Plaintiffs have filed a Response in opposition to the instant Motion, essentially arguing that the allegations in their Complaint and Exhibits attached thereto were sufficient. Docket No. 10.

This action is a products liability personal injury action filed by the pro se Plaintiffs relating to a firearm they purchased on or about August 20, 2011. Docket No. 1. Specifically, Plaintiffs contend that on or about December 7, 2013, Plaintiff Randy McNeal was inside the retail sales section of On Target Guns and Indoor Range when he attempted to "make the gun

safe to show a friend." *Id.* After depressing the magazine release and removing the magazine, he pulled the slide back and tried to push the slide stop up to lock the slide back so the firearm could thoroughly be checked for ammunition, but the slide would not come back far enough to be placed in the locked position. *Id.* He then briskly drew back the slide several times attempting to lock the slide back, at which time the gun slipped and accidentally discharged when he caught it, resulting in a gunshot wound to his left small finger, which then had to be amputated. *Id.* Plaintiffs argue that a loose screw on the built-in laser sight prevented the slide from being placed in the locked position and the gun from being "made safe." *Id.* Plaintiffs contend that this "loose screw" was a not a "maintenance issue," but rather, was a "defect/quality control issue" of which Defendants were aware and of which they failed to warn or "make safe." *Id.* Plaintiffs assert that Defendants have a duty to manufacture safe firearms without defects and unreasonably dangerous conditions, and they allege that if "said firearm had performed as designed and described in The Safety and Instruction Manual, said discharge would never have happened and the aforementioned injury would never have occurred." *Id.* Plaintiffs maintain that Defendants have subsequently redesigned the model with a different built-in laser and have been retrofitting the original design with the new laser upon request. *Id.*

Plaintiff Randy McNeal alleges that "as a proximate result of one or more acts of negligence for failure to inspect said firearm for defects; warn or make safe a dangerous condition; negligent acts; failure to adequately train employees; and other breaches of duty owed by the Defendant to the said Plaintiff, he has suffered and continues to suffer debilitating injuries as follows: pain and suffering, future pain and suffering, permanent physical and psychological impairment, medical expenses, and loss of enjoyment of certain social, recreational, work

activities and loss of wages, future loss of wages and loss of earning capacity." *Id.*

Plaintiff Vicki McNeal alleges that "as a direct and proximate result of one or more acts of negligence and negligence per se by Defendant, she has suffered and continues to suffer loss of consortium, companionship, and society with her Husband, Randy McNeal, which they previously shared with each other and are entitled as Husband and Wife." *Id.*

Plaintiffs seek the return of their firearm (which they assert is in the possession of Defendants), compensatory damages, costs, and such other relief as the Court deems appropriate. *Id.*

For the reasons set forth below, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 8) be GRANTED, and that this action be DISMISSED.

## II. Law and Analysis

### A. Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th

Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

**B. Tenn. Code Ann. § 29-28-101, *et seq.***

The Tennessee Products Liability Act of 1978 ("TPLA"), Tenn Code Ann. § 29-28-101, *et seq*., governs injuries related to a product in Tennessee. Under the TPLA, the manufacturer of a product may be liable for injuries "caused by the product" shown to have been "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code. Ann. § 29-28-105(s). Establishing a prima facie products-liability claim in Tennessee requires that the plaintiff prove: (1) the product was defective and/or unreasonably

dangerous; (2) the defect existed at the time the product left the manufacturer's control; and (3) the injury was proximately caused by the defective product. *Sigler v. Am. Honda Motor Co.,* 423 F.3d 469, 483 (6th Cir. 2008).

"The fact that a plaintiff is injured is not proof of a defect in the product," and "the failure or malfunction of the [product], without more, will not make the defendant liable" (*King v. Danek Med. Inc.,* 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000)), as there is no duty to create a product that is "accident proof" or "incapable of causing injury" (*Kerley v. Stanley Works*, 553 S.W.2d 80, 84 (Tenn. Ct. App. 1977)). The inquiry, therefore, is not whether the product itself caused the injury, but rather, whether the alleged design defect of the product caused the injury. *See Maness v. Boston Sci.*, 751 F. Supp. 2d 962, 970 (E.D. Tenn. 2010).

In order to establish the requisite causation, a plaintiff must trace the injury to the specific defect alleged in the complaint. *King*, 37 S.W.3d at 435*; see also Cansler v. Grove Mfg. Co.*, 826 F.2d 1507, 1511 (6th Cir. 1987); *Browder v. Pettigrew*, 541 S.W.2d 402, 405 (Tenn. 1976). Tracing the injury to the specific defect alleged in the complaint requires proof of both "cause in fact" and "proximate cause." *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1988). "Cause in fact" refers to the cause and effect relationship between the tortious conduct and the injury or loss; *i.e.*, the injury or loss would not have occurred "but for" the tortious conduct. *Id.*

"Proximate cause" is decided "upon mixed considerations of logic, common sense, justice, policy and precedent." *Mullins v. Seaboard Coastline Railway Co.,* 517 S.W.2d 198, 201 (Tenn. Ct. App. 1974). It limits the imposition of legal responsibility to "those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." *Doe v. Linder Const. Co.,* 845 S.W.2d 173, 181 (Tenn. 1992). Ultimately, proximate

cause turns on the issue of foreseeability. *Wyatt v. Winnebago Indus.*, 566 S.W.2d 276, 281 (Tenn. Ct. App. 1977). An injury that is "the natural and probable consequence" of a negligent act is actionable, but an injury that could not have been foreseen or reasonably anticipated as the probable result of an act or omission is not actionable, as that act or omission would be either no cause or a remote cause of the injury. *Moody v. Gulf Ref. Co.,* 218 S.W. 817, 819 (Tenn. 1920).

**C. The Case at Bar**

As discussed above, Plaintiffs purchased the subject firearm on or about August 20, 2011. They contend that on or about December 7, 2013, Plaintiff Randy McNeal was inside the retail sales section of On Target Guns and Indoor Range when, in an attempt to "make the gun safe to show a friend," he, after depressing the magazine release and removing the magazine, pulled the slide back and tried to push the slide stop up to lock the slide back so the firearm could thoroughly be checked for ammunition, but the slide would not come back far enough to be placed in the locked position. Docket No. 1. He then briskly drew back the slide several times attempting to lock the slide back, at which time *the gun slipped and accidentally discharged when he caught it*, resulting in a gunshot wound to his left small finger, which then had to be amputated. *Id.* (Emphasis added). Plaintiffs argue that a loose screw on the built-in laser sight prevented the slide from being placed in the locked position and the gun from being "made safe," thus causing his injury. *Id.*

Taking the allegations of Plaintiff's Complaint as true, the gun slipped from Plaintiff Randy McNeal's hand and accidentally discharged when he caught it, resulting in a gunshot wound to his left small finger, which then had to be amputated. Accepting as true Plaintiff's assertion that a loose screw on the built-in laser sight prevented the slide from being placed in the

locked position and the gun from being "made safe," Plaintiff fails to sufficiently connect the loose screw preventing the slide from being placed in the locked position to the gun slipping when he was racking the slide and accidentally discharging when he caught it. Because the loose screw did not cause Plaintiff to drop the firearm, it can not be said to have caused the accidental discharge. Accordingly, this type of accident was not a foreseeable consequence of the alleged defect, and Plaintiffs cannot establish the requisite causation.

## III. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 8) be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. Clifton Knowles

E. CLIFTON KNOWLES
United States Magistrate Judge